## 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊,

CUNNINGHAM V. COMMONWEALTH.

| 88 | 37 |
|-----|-----|
| 107 | 896 |

June 18th, 1891.

'Absent, *Hinton,* J.

1. CRIMINAL PROCEEDINGS—*Indictment—Attempt at rape.*—Under Code, 1887, § 3888, in indictment for attempt to commit rape, some *act* towards its commission must be alleged, and at the trial proved; but to aver that accused " violently and feloniously made an assault " in the attempt;
HELD:
    Sufficient.
2. IDEM—*Argument—Harmless error.*—Under the circumstances of this case, it was not an abridgement of the accused's right to be heard, to limit the argument of counsel to one hour and a half to a side. *Jones* v. *Commonwealth,* 87 Va. 63.
3. IDEM—*New trial—Case at bar.*—The evidence in this case, being considered as upon a demurrer to evidence, warrants the verdict.

Error to judgment of hustings court of city of Bristol, rendered September 2d, 1890, whereby Mance Cunningham, the plaintiff in error, was sentenced to confinement in the state penitentiary for the period of three years, in accordance with the verdict upon the trial of an indictment against him for an attempt to commit rape. Opinion states the case.

*A. H. Blanchard,* for plaintiff in error.

*Attorney-General R. Taylor Scott,* for commonwealth.

LACY, J., delivered the opinion of the court.

The charge is that with force and arms, in and upon one Martha Hartsock, violently and feloniously made an assault, and her, the said Martha Hartsock, feloniously did attempt to ravish and carnally know, against her will and by force.

To the indictment the plaintiff in error demurred, and the demurrer being overruled, he pleaded not guilty. Upon the trial witnesses were examined on each side, and the argument of counsel being about to commence, the court limited the counsel in their arguments to one hour and a half on a side, and the plaintiff in error excepted because the court limited the time to be consumed by the counsel in argument. And the argument of counsel being concluded, the jury rendered a verdict as follows: " We, the jury, find the defendant guilty as charged in the indictment, and fix the term of his imprisonment in the penitentiary at three years."

Whereupon the prisoner moved the court to set aside the verdict of the jury, as being contrary to the law and the evidence, and grant him a new trial; which motion the court overruled, and the prisoner excepted.

And judgment was thereupon rendered by the court in accordance with the verdict. Whereupon the prisoner applied for and obtained a writ of error to this court.

The first assignment of error here is as to the action of the court in overruling the demurrer to the indictment. His ground of objection to the indictment is that, as the indictment is for an attempt to commit a felony, under section 3888 of the Code of Virginia, that it was necessary that the indictment should set out the overt acts done by the accused towards the commission of the offence.

Section 3888 is as follows, so far as it affects this question:

" Every person who attempts to commit an offence, and in such attempt does any act towards its commission, shall, when not otherwise provided, be punished as follows : If the offence attempted be punishable with death, the person making such attempt shall be confined in the penitentiary not less than two

nor more than five years, *except that in case of an attempt to commit rape, the term of confinement in the penitentiary shall not be less than three nor more than eighteen years.*"

The contention of the plaintiff in error is that the indictment must set out the act done in the attempt to commit the felony charged to have been committed.

Section 3888 provides, as we have seen, that every person who attempts to commit an offence, and in any such attempt does any act towards its commission, shall be punished, &c.

This is an indictment for an attempt to commit a rape, and it is necessary to constitute the crime that the accused should have done some act toward the commission of the said rape; this is an element of the offence, an essential element of the offence, and without its existence the crime does not exist. Being, therefore, an essential part of the offence, which is not complete without it, it must be averred and proved.

In the case of *Commonwealth* v. *Clark*, 6 Gratt. 684, Judge Leigh said for the general court " that the indictment ought to have alleged some act done by the defendant of such a nature as to constitute an attempt to commit the offence mentioned in the indictment. It having been adjourned to the general court, among others, this question : Whether the said indictment should not allege that the defendant did some act towards the commission of the offence, with the attempt to do which he is charged in the indictment."

In the subsequent case of *Uhl* v. *Commonwealth*, *Id*. 706, on an indictment for an attempt to burn a barn, it was held that an indictment charging that the defendant " did, about 12 o'clock of the night of the said day, attempt to set fire to the said barn by then and there carrying live coals of fire in a certain tin cup, then and there held by them, and then and there putting and placing the said live coals of fire, which they then and there had in their possession, in manner aforesaid, to, at, and against the straw, chaff and other combustible matter in, about, and against said barn, with a

wicked intention, by means thereof, unlawfully, wilfully and maliciously to burn and consume said barn," was a good indictment under this statute; and held, further, that, according to the true intent and meaning of the law, an attempt can only be made by an actual, ineffectual deed, done in pursuance of, and in furtherance of, the design to commit the offence. *Nutter's Case*, 8 Gratt. 699; *Hicks' Case*, 86 Va. 223; *Glover's Case, Id.*, 382; Wharton's Crim. Law, 192, and cases cited.

The indictment in this case is for an attempt to commit rape, under section 3888, *supra*, and the charge is in the words of the statute charging the attempt. The act done towards the commission of the offence—that is not of rape, but of an attempt to commit rape—is that the defendant did, with force and arms, in and upon Martha Hartsock, then being over the age of twelve years—to-wit, of the age of fifty years—violently and feloniously made an assault, and her, the said Martha Hartsock, then and there—to-wit, on the day and year aforesaid—feloniously did attempt to ravish and carnally know, against her will and by force, &c.

The plaintiff in error complains that this indictment did not charge or aver an act done in the attempt to commit the offence, and so that he is surprised when the evidence was offered to show that, in the night-time, while the said Martha Hartsock was in bed and asleep, he, the said plaintiff in error, laid his hands upon her and declared his purpose, and, when she called for help, threatened to choke her, and seized her by the shoulders to that end, when, help arriving in response to calls, the said plaintiff in error fled. The indictment distinctly charges the violent and felonious assault, and the attempt to rape. If this be true, then an act was done by him in the attempt to commit the offence. He made a violent assault, and attempted to commit rape. To charge this is to charge and aver an act done towards the commission of the offence; an assault is an act; no mere words can constitute an assault. The demurrer to the indictment was properly overruled; there was no error in that action of the corporation court of Bristol.

Upon the question as to the action of the trial court in limiting the argument to one hour and a half to a side; this was not objected to at the time, but only after the attorney for the commonwealth had concluded his opening argument. Under the circumstances of this case this does not appear to be an abridgment of the right of the accused to be fully heard, and was not an undue exercise of that superintending control which is the province of the trial court, and constitutes no ground of reversal. The witnesses were few, and the facts very limited in their range. See *Jones's Case*, 87 Va. 63, and cases cited.

It remains to consider whether the court erred in refusing to set aside the verdict and grant a new trial to the accused in this case, upon the ground that the verdict was contrary to the law and the evidence.

The evidence is certified; and must, under our law, be considered here as upon a demurrer to evidence.

The evidence of the commonwealth is that Martha Hartsock, a white woman and a widow of fifty years of age, was employed in the kitchen of the Hamilton house, of the city of Bristol, as assistant cook, and the accused was an unmarried colored man, who was employed, on Tuesday, the 17th of June, 1890, as assistant meat cook in the same kitchen. In a day or two after his arrival and employment, the accused, while engaged about his work, as was Mrs. Hartsock, sitting fronting each other, said to her : " I like your look mighty well; let's you and me live together and be as one." That he was promptly repulsed, Mrs. Hartsock saying she had not got low enough yet to live that way with white men, let alone with negroes.

On the following Saturday night, after her work was done, Mrs. Hartsock went to her room and went to bed, in a house in the same yard as the Hamilton house kitchen was situated. At about 2 o'clock in the night she was awakened by a man putting his cold hand upon her leg; when she awoke she saw it was Mance Cunningham, the prisoner. He told her he

came there to do something with her, and he was going to do what he came to do. She cried for help, and tried to arouse a woman sleeping in the same room, the witness, Retty Scott, but she did not answer, and the prisoner said: "Damn you; if you don't stop hollowing I'll choke you"; and, suiting his action to the word, grabbed her by the shoulders as if he was going to put the threat into execution; that he came there to do something, and was not going away until he did it; and she screamed, and then Retty Scott answered, and struck a match and lit the lamp; and the prisoner turned around, looked at her, and went out of the room the way he came in, through the window, and went pretty fast; that she recognized the prisoner as soon as she opened her eyes; that the light from an electric lamp was shining through the window into the room; that the next morning, when the prisoner came to work, he passed Mrs. Hartsock and dropped his eyes; that immediately outcry was made, and Retty Scott went to call help from the other servants, and Mrs. Hartsock's brother-in-law and Mr. Hamilton, of the Hamilton house, were notified, and some of the servants came to her room that night. Retty Scott, says that, when sufficiently aroused, she jumped out of bed and lit the lamp and opened the door, and it was *sorter dark* in the room, but she could tell that there was something in the house; it was a short, dusky-looking object, and she took it to be a man; and that when she opened the door he went out of the door, and she went out and called for Mrs. Dingo, one of the employees of the house.

The prisoner denied on the witness-stand having done any of the things charged against him, and his sister and brother-in-law endeavored to set up an *alibi*, claiming that he slept in their house, and they did not know of his going out during the night, and did not think he could have gone out without their knowledge, as the door was fastened with a poker, which rattled in the latch and made a noise when the door was opened, and they were frequently up that night, giving medi-

cine to the husband, who was sick to some degree; and some other witnesses attempted the same thing, to establish an *alibi*, by showing that the accused went to bed at 10 o'clock and did not get up any more.

The jury, however, upon the facts, found the accused guilty, and the trial court rendered judgment upon the verdict, overruling the motion for a new trial by the prisoner.

And if we consider the case upon the principles of a demurrer to the evidence, there is no way that we can disturb the verdict of the jury. The proof is direct that the accused committed the crime. The evidence for the defendant attempts to contradict this by proving an *alibi*, but the jury has considered and decided this.

In this court the exceptant must be held to admit as true the evidence of the commonwealth, and all just inferences that may flow from it, and waive all of his own evidence in conflict therewith. Apply this rule, and the case is distinctly proved for the commonwealth, and there is nothing to the contrary, as far as the alleged conflict between the commonwealth's witnesses is concerned, one woman said the prisoner jumped out of the window, and the other that she thought she saw a short, dusky object, and that it went out of the door when she opened it. One said there was light in the room from the electric lamp, outside somewhere, and the other said it was "sorter dark" in the room; while the witnesses for the defence say that the electric light could not shine through this window.

Whatever conflict there is in this had to be determined by the jury, the proper triers of the fact, and they have done so. It is probable that, while the electric light could not shine directly through the window, that, when lighted outside, some light, by reflection, found its way through the open window. The witness, Retty Scott, does not say that the room was absolutely dark, but " sorter dark," and that would indicate some light—enough, perhaps, to enable the startled woman to identify her assailant, who was so close to her as to have rude hold

on her, and who was helping the recognition by speaking to her in a voice which she had become acquainted with during the few days she had served with the prisoner.

I do not think this court can properly disturb this verdict upon the ground that it is contrary to the evidence. And, under the law, the term of confinement fixed for this crime is not less than three nor more than eighteen years. In accordance with the law the term is fixed, and it is tempered with mercy, as the lowest time allowed by the law is fixed for the period of the punishment. This answers, also, the complaint of the counsel for the prisoner, who claims that the jury was actuated by prejudice against the negro because he assaulted a white woman.

Upon the whole case there is no error in the action of the corporation court of Bristol, and the same should be affirmed.

JUDGMENT AFFIRMED.