## B. W. Moore *v.* State.

[59 South. 3.]

1. RAPE. *Assault with intent. Indictment. Witnesses. Evidence. Hearsay. Demurrer.*

A demurrer should not be sustained to an indictment which charges that defendant "did unlawfully and feloniously make an assault on E, a female, with the unlawful and felonious intent then and there her the said E, to unlawfully and feloniously ravish and carnally know, forcibly and against her will" since such indictment at least charges an assault with the intent to commit a felony to wit, rape, which, under the common law was a misdemeanor.

2. WITNESSES. *Evidence. Impeachment.*

Where the wife of a defendant on trial for an assault with intent to commit rape, denied on cross-examination by the district attorney that her husband had agreed to pay money to the father of the girl assaulted, if he would withdraw the charge, it was

error to allow the state to introduce a letter written by the wife to that effect, she stating that the letter was written without her husband's knowledge, since all of such proposed compromise was entirely collateral to the issue and led the jury to believe that the defendant tacitly confessed his guilt by entering into such an agreement.

3. CRIMINAL LAW. *Evidence. Hearsay.*

It is not permissible to allow a state witness to corroborate her testimony by stating that she had previously told the same story.

APPEAL from the circuit court of Clark county.

HON. JNO. L. BUCKLEY, Judge.

B. W. Moore was convicted of an assault with intent to commit rape and appeals.

The facts are fully stated in the opinion of the court.

*Wyatt Easterling* and *T. G. Bilbo* and *Easterling, Potter & Greaves,* for appellant, filed elaborate briefs too long for publication.

*H. C. Dear,* for appellant.

My first contention for the appellant is, that the demurrer should have been sustained by the lower court because the indictment failed to charge that the said Eula Floyd was of previous chaste character. Section 1359 of the Code of 1906, reads as follows:

"Every person who shall be convicted of an assault with intent to forcibly ravish any female of previous chaste character shall be punished by imprisonment in the penitentiary for life, or for such shorter term as may be fixed by the jury." The said section making its appearance in the Code of 1906 for the first time and is an entirely new statute. The words "of previous chaste character" are very material and should have by all means been alleged in the indictment and should not only have been alleged in the indictment but should have been proven by the state as charged. This said section 1359 covers this case exactly and it was clearly the duty

of the state to prosecute under this section. The state, however, elected and stated, which it undoubtedly had the right to do in a proper case, and the record will bear me out, that the defendant was being tried under section 1043 of the Code and the case was tried with it thoroughly understood by appellant that he was being tried under said section and after the case was closed and after all instructions for appellant based on said section were submitted to the court, the district attorney to appellant's utter surprise and astonishment after he had ascertained that the state had failed to make out its case under said section and that instructions asked for by appellant were equal to a peremptory one under said section and could not be refused by the court, attempted to withdraw agreement that apellant was being tried under section 1045 and the court thereupon refused instructions 12, 13 and 14 asked for by appellant, which was highly prejudicial as his defense had been based upon this section and I submit that he did not have a fair and impartial trial.

If the appellant was tried under section 1359, which we contend was the proper one to try him under, the indictment was bad because it failed to charge that the prosecutrix was of previous chaste character and the state failed to make such proof. The only other section of the Code, which the state can contend the appellant was tried under is section 1049, and we humbly submit that in our opinion the state could not successfully prosecute an attempt to rape case of this kind under said section as it is a general one and provides for the prosecution of those crimes that are not covered by statute and reads as follows: "Every person who shall design and endeavor to commit an offence, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows:

You will readily see from this section that persons charged with crimes ''where no other provision is made by law for the punishment of such offense'' are to be tried under this statute and no others, but if there is a statute covering the crime, then there is provision made for the prosecution of same and it is mandatory on the officials of the state to proceed under the express statute, especially where there is no question as to the chastity of the prosecutrix and her chastity has never been questioned in this case.  I submit that if this was not an ideal case to prosecute under 1359 there will never be one and the statute should be repealed as it is a ''dead letter.''

The indictment fails to allege an overt act, merely alleging that defendant did unlawfully and feloniously make an assault, with the unlawful and felonious intent to forcibly ravish against her will, without alleging what was done and the testimony failed to show that there was any force whatever used and wholly fails to show that whatever was done was against the will of prosecutrix. I think the weapon, means or force in attempting to accomplish the purpose should have been set out in the indictment.  See *Hogan* v. *State,* 50 Fla. 86 and 39 So. 464. In this case the state attempted to prove that appellant in order to accomplish his purpose attempted to administer some substance (nobody knows what) which was in a bottle and was held in his hand, but the prosecutrix did not attempt to say what the bottle contained or that there was any odor coming from the bottle; therefore, there is no testimony that the smothering feeling was from the effects of any substance whatever.  You will see that the supreme court of Texas has held in the case of *Ford* v. *State,* 41 Tex. Cr. 270 and 96 Am. St. Rep. 787, that ''under the Texas statute to attempt to have intercourse with a woman by administering, without her consent, any substance producing unnatural sexual desire, or such stupor as prevents or weakens resistance, is an attempt to rape by fraud, and not an assault with intent

to rape, which can only be committed by force or attempted force, and it is not competent to indict in such case for assault with intent to rape and convict of attempt to rape by fraud.

The testimony of Eula Floyd that she told her sister some time during the night, but some time after the alleged crime had been committed that it was Berry Moore, who entered their room, was entirely incompetent and inadmissible and it was also incompetent to permit the witness to testify, over objections of appellant, that her sister told her to keep quiet as they were going to get some dogs and then it would not be necessary for them to go to court. See 94 Miss. 104 and 47 So. 898.

I next desire to call your attention to the way the district attorney cross-examined Mrs. Moore, and submit that the court erred in permitting her to be examined in the way she was. The district attorney took a letter from among his papers and showed Mrs. Moore the name signed thereto, asking her if that was her signature, she admitted that it was. The appellant then asked permission to examine the letter which was refused by the court, and the district attorney was then permitted to ask witness about certain parts of the letter and was required to answer same over objections of appellant and in that way got parts of the letter before the jury which was all entirely inadmissible and incompetent, but that was not all, the climax was reached when the district attorney offered the letter in evidence and was objected to by appellant for the reason that it had not been shown that the aplant was privy to it, or even to have had any knowledge of it, but on the contrary Mrs. Moore testified that it was her sole act, that the appellant knew nothing about it and she had written same because she was in great distress, etc.

*W. W. Venable,* district attorney for state, filed an elaborate brief too long for publication.

Argued orally by *Lamar F. Easterling* and *Theo. G. Bilbo,* for appellant.

Argued orally by *W. W. Venable,* for state.

COOK, J., delivered the opinion of the court.

The appellant was indicted, tried, and convicted of an assault with the intent to commit rape. The indictment, omitting the formal part, charges that appellant "did unlawfully and feloniously make an assault upon one Eula Floyd, a female, with the unlawful and felonious intent then and there her, the said Eula Floyd, to unlawfully and feloniously ravish and carnally know, forcibly and against her will." A demurrer was interposed to this indictment, and overruled by the court.

Section 1358 of the Code of 1906 defines the crime of rape and fixes the punishment, where the party raped is a female under the age of ten, or, being over ten, where the carnal knowledge is against her will. Section 1359 of the Code reads as follows: "Every person who shall be convicted of an assault with intent to forcibly ravish any female of previous chaste character shall be punished. by imprisonment in the penitentiary for life, or for such shorter time as may be fixed by the jury." Section 1360 provides for the punishment of persons who shall have carnal knowledge of any female above the age of ten years without her consent, by administering to her any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance. Section 1043 of the Code provides for the punishment of persons who may assault or be guilty of assault and battery upon another with any deadly weapon, or other means or force likely to produce death, with intent to kill and murder, or to maim, ravish, or rob such other person, or in the attempt to commit any murder, rape, etc. Section 1049 is as follows: "Every person who shall design and endeavor to

commit an offense, and shall do any overt act towards the commission thereof, but shall fail therein, or shall be prevented from committing the same on conviction thereof, shall, where no provision is made by law for the punishment of such offenses," etc. The foregoing sections are gathered under the chapter of the Code headed "Crimes and Misdemeanors," and comprise all the sections referring to rape. At the outset we will say that the demurrer to the indictment was properly overruled, because the indictment at least charges an assault with the intent to commit a felony, to wit, rape, under the common law, which was a misdemeanor.

The evidence in the case discloses the following state of facts: Three sisters, aged seventeen, fifteen and twelve, respectively, were asleep in the same room; the two oldest occupying the same bed. Late at night one of the girls awakened with the feeling of being crowded. She threw her hand backwards, and told her sister to move away; but when she touched the body of the person crowding her, she found that a man was in the bed between her and her sister. Both of the sisters sprang from the bed and ran into their father's room, adjoining their own, crying that a big yellow negro was in the room. The neighbors were alarmed, and gathered to institute a search for the criminal, and hounds were procured to follow his trail. The tracks leading from the ground under the window of the room occupied by the girls were followed quite a distance, but they seemed to lead in no particular direction, but the party who made them seemed to be wandering at random. Two days after this occurrence a charge was made against the defendant by the girls, and he was arrested. The defendant was charged with assaulting Eula, the elder of the two girls, with intent to ravish her. The other girl, Edna by name, claimed to have recognized the defendant by the aid of the moonlight as he went out of the window. Eula in her testimony said that, when she turned in the

bed to see who it was that was crowding her, the man turned his face over the pillow presenting his profile to her, and she saw in his hand a bottle containing some white liquid, and that the man had his finger over the mouth of the bottle. She said that she saw the defendant two days after this incident, and recognized his profile as the party who had gotten in bed with her and her sister.

The defendant was a foster-brother of the father of these young girls; but for some reason, unexplained by the record, an estrangement had grown between them, and they had not had any association with or recognition of each other for thirty-four years, and their families had no social or other relations with each other during this time. It seems that the father of the girls was willing, if the law would permit him to do so, to withdraw charges against the defendant, and allow him to leave the country. When the wife of the defendant was on the stand testifying in his behalf, and under cross-examination by the district attorney, she was asked if her husband had not agreed that he would pay to the father one hundred dollars if he would withdraw the charges and allow him to remain at home with his family. To this question the witness replied that her husband had not promised or agreed to pay anything to the father of the girl, in consideration of the withdrawal of the charge. The district attorney then produced a letter and exhibited it to the witness, the wife of the defendant, and asked if she did not write to the father of the girls, and so state to him that her husband would pay this sum of money as before stated, and read this statement in the letter to her in the presence of the jury. The witness said that, while that was contained in the letter, her husband had nothing to do with it; but the letter was written upon her own motion, for the purpose of aiding her husband in his trouble. The court then suggested to the district attorney that this, together with

the entire letter, should be submitted to the jury, which was done over the objection and protest of defendant's counsel.

Under the guise of contradicting the witness, and about a collateral matter, the state then succeeded in getting before the jury something which was very prejudicial to the defendant. It crops out in the evidence that the father of the injured girls was willing that the prosecution of defendant should be abandoned, if this could be done; that the plan proposed contemplated the removal of defendant and his family from the state, but the wife of defendant was unwilling to leave her home to go to a distant state, and she volunteered to write a letter to the father of the girl, in which she said her husband would pay one hundred dollars, if he was allowed to remain at home. This was entirely collateral to the issue, all of this proposed compromise, and certainly led the jury to believe that the defendant tacitly confessed guilt by entering into such an agreement, which the evidence of his wife shows he did not do; but it is very probable that the jury gave little weight to this part of her testimony. *Bridges* v. *State,* 86 Miss. 378, 38 So. 679.

It was error, also, to permit witness Edna Floyd to testify that she told her sister, immediately after the flight of the person from their room, that she recognized the person as Berry Moore, the defendant. *Williams* v. *State,* 79 Miss. 555, 31 South. 197. The identity of the man committing the crime was the all-important question in this case, and this witness, Edna Floyd, was the only witness who claims to have recognized the man.

For these errors, the case must be reversed.

It will be observed that the pleader, in drafting the indictment followed the language of section 1359, and it also appears that this section is the only statute of this state which, in terms, makes an assault with intent to ravish a felony. This indictment here does not charge an attempt to ravish, nor does it set out and describe any

overt act constituting an attempt, unless it can be said that the use of the word "assault" implies an attempt, and under the authorities this is very doubtful. *Brown* v. *State,* 7 Tex. App. 569; *Burney* v. *State,* 21 Tex. App. 565, 1 S. W. 458; *Taylor* v. *State,* 22 Tex. App. 529, 3 S. W. 753, 58 Am. Rep. 656. These cases seem to decide that where the indictment charges the rape to have been committed by force, and at the trial there is no proof of force, the defendant cannot be convicted of assault with intent to rape. Such pleading and proof will justify a conviction only for an attempt to rape. It is difficult to harmonize the authorities upon this particular feature of this case. Our legislature makes, in section 1359, an assault with intent to commit rape upon a female of chaste character a felony of the highest grade, and inasmuch as under the common law this offense was a misdemeanor only, and was a distinct offense, it seems doubtful as to whether or not the indictment under review charges the defendant with anything more than a misdemeanor. If the indictment averred the previous chaste character of the female, it would be beyond criticism. The case may be retried, and these suggestions are offered because of this contingency.

*Reversed and remanded.*

SMITH, J. (specially concurring).

I concur in the reversal of the judgment rendered in the court below upon the grounds set forth in the opinion in chief, but I do not entertain the doubts expressed by my Brother COOK as to whether or not the indictment charges an attempt to commit the crime of rape. I am aware that, in cases involving attempts to commit those crimes in which the assault is usually one of the elements thereof, some courts have drawn a distinction between an attempt to commit the crime and assault with intent to commit it. But this distinction, if such it can be, in fact really amounts simply to this: That an attempt to com-

mit the crime does not necessarily include an assault, while an assault with intent to commit a crime always constitutes an attempt to commit such crime. In rape, if the female, although under the age of consent, in fact does consent to the intercourse, the man may still be guilty of an attempt to commit rape; but no element of assault would be present, for the reason that this element is destroyed by the consent of the female.

My mind is unable to grasp the conception of a felonious assault upon a female with intent to have sexual intercourse with her, forcibly and against her will, not being always an attempt to commit rape. In the language of Mr. Bishop, in his work on Statutory Crimes (section 496), "the common form of attempt to commit the ordinary rape is by an assault with such intent." The confusion in the books upon this subject is more apparent than real, and grows out of the fact that an assault with intent is a particular kind of attempt, and in dealing with those attempts, usually committed by means of assault, judges, text-writers, and legislators have frequently used the specific language "assault with intent," etc., instead of referring to them generally as attempts. This is particularly noticeable in the works of Mr. Bishop, wherein it is manifest that he considers an assault with intent as constituting an attempt. 1 Bishop's New Criminal Law (8th Ed.), 731; Bishop on Statutory Crimes (3d Ed.), 492 to 496, inclusive. In 1 McClain on Criminal Law, sec. 265, it is said that "the various assaults with felonious intent are examples of the different attempts in which the intent gives color to the acts, rendering it punishable on account of the evil involved in the intent." See, also, 23 Am. & Eng. Ency. Law (2d Ed.), 868; 17 Ency. Pleading & Prac. 662; 33 Cyc. 1446; *Johnson* v. *State,* 14 Ga. 55; *Cunningham* v. *Commonwealth,* 88 Va. 37, 13 S. E. 309; *People* v. *Christian,* 101 Cal. 471, 35 Pac. 1043; *People* v. *Lee Kong,* 95 Cal. 666, 30 Pac. 800, 17 L. R. A. 626, 29 Am. St. Rep. 165; *Rookey* v. *State,* 70 Conn. 104, 38 Atl. 911.

I am also aware of the rule that, in an indictment charging an attempt to commit a crime, the overt act manifesting the intent must be alleged; but this rule was here complied with. The overt act alleged is an assault, and it was not necessary to allege the manner in which the assault was committed. *Cunningham* v. *Commonwealth,* 88 Va. 37, 13 S. E. 309. It seems to me, however, that this whole matter is covered by the case of *Green* v. *State,* 23 Miss. 509. In that case the appellant was indicted under a statute which provided that if "any slave shall attempt to commit a rape," etc., and the indictment alleged that he "with force and arms in the county aforesaid, in and upon one Eliza Conely (being then and there a free white woman), feloniously did make an assault, and her, the said Eliza Conely, then and there feloniously did attempt to ravish and carnally know by force and against her will, and in said attempt did forcibly choke and throw down the said Eliza Conely." One of the objections raised to this indictment was that the addition of the words "and in said attempt did forcibly choke and throw down the said," etc., made it either bad for duplicity, or one for assault and battery only. In responding to this objection the court said: "It must be perceived by a bare inspection that there are not two distinct and separate offenses charged herein. The last allegation, which is made the point of attack, is evidently nothing more than a description, somewhat more minute, of the manner of the assault, before averred to have been made. By no rule of construction can this allegation be held to charge an assault and battery distinct from the previously alleged attempt at rape. For if, separated from this allegation, it conveys no meaning whatever, as it stands in the indictment, it forms no part of the description of the offense, and was with propriety treated as surplusage by the court." In so holding, the court necessarily assumed that the indictment was sufficient to charge the crime of attempt, and necessarily de-

cided that it was not necessary to allege the manner in which the assault was committed. It is true that in that case the allegation in effect was that the assault was made in the attempt to commit rape, while in the case at bar the allegation is that it was committed with intent to commit rape; but there can be no difference in the meaning of the two allegations. This was expressly so held in *Johnson* v. *State,* 14 Ga. 55.

The Texas cases cited by my Brother Cook are not in conflict with the views herein expressed and illustrate the fact that an assault with intent is simply a particular kind of attempt. All that the court decided in those cases was that there can be no conviction of an assault with intent to rape in the absence of force or attempted force. In this holding I fully concur, for that simply means that in prosecutions for attempts the overt act must be proven as laid in the indictment, and, when the overt act alleged is an assault, such assault must be proven.