BONDS *v.* STATE.

(Division B.   Oct. 10, 1932.)

[143 So. 475.   No. 30165.]

Ely B. Mitchell, of Corinth, for appellant.

**W. D. Conn,** Assistant Attorney-General, for the state.

**Anderson, J.,** delivered the opinion of the court.

Appellant was indicted and convicted in the circuit court of Alcorn county of an attempt to rape Gladys King, and sentenced to the penitentiary for a term of five years. From that judgment he prosecutes this appeal.

Appellant contends that he was entitled to a directed verdict on the ground that the evidence was insufficient to sustain the conviction. It would answer no good purpose to set out the evidence upon which the conviction was had; it was amply sufficient to sustain the charge. In addition to the testimony of the injured female, there was other evidence strongly corroborating hers.

The indictment charged (leaving out date and the venue) that appellant "in and upon Gladys King, a female person over the age of twelve years, did feloniously make an assault with the felonious intent and in the attempt then and there her, the said Gladys King, to

unlawfully, feloniously and forcibly ravish and carnally know, without her consent and against her will.''

Appellant contends that the indictment charged, not a statutory, but a common-law, offense, and that under the common law the offense charged was a misdemeanor and not a felony, and therefore the court erred in sentencing him to the penitentiary. To sustain that contention he relies on Moore v. State, 102 Miss. 148, 59 So. 3, 5. In the Moore case the indictment charged the defendant with a felonious assault with intent to rape. It did not charge that the assault was made with a deadly weapon or with any weapon of any kind, nor that the female was of previous chaste character. It is stated in the opinion in that case that in drafting the indictment there was an attempt to follow section 1359 of the Code of 1906, of which section 1125, Code of 1930, is a rescript. The court said, among other things: ''It seems doubtful as to whether or not the indictment under review charges the defendant with anything more than a misdemeanor. If the indictment averred the previous chaste character of the female, it would be beyond criticism. The case may be retried, and these suggestions are offered because of this contingency.'' The court held further that the lower court committed no error in overruling a demurrer to the indictment, and reversed the case on other grounds. It will be seen from that part of the opinion quoted that the question whether the indictment charged anything more than a misdemeanor was left undecided, the court simply expressing doubts thereon.

Sections 787 and 1125, Code of 1930, are the only statutes denouncing as a crime an attempt to rape. Section 787 provides, among other things, that any person who shall be convicted of an assault or an assault and battery upon another with a deadly weapon or other means or force likely to produce death with intent to ravish shall be imprisoned in the penitentiary not more than ten years, or fined not more than one thousand dollars, or

imprisoned in the county jail not more than one year, or both.

Section 1125 provides that: "Every person who shall be convicted of an assault with intent to forcibly ravish any female of previous chaste character shall be punished by imprisonment in the penitentiary for life, or for such shorter time as may be fixed by the jury."

It is apparent that appellant was not indicted under either of those statutes. The indictment does not charge that the assault was made with a deadly weapon as required by section 787, nor does it charge that the female was of previous chaste character as required by section 1125.

Section 1122, Code of 1930, provides, among other things, that every person who shall be convicted of rape by forcibly ravishing any female of the age of twelve years or upward shall suffer death, unless the jury shall fix the punishment as imprisonment in the penitentiary for life, "as it may do in case of murder."

Section 793, Code of 1930, provides as follows: "Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows: If the offense attempted to be committed be capital, such offense shall be punished by imprisonment in the penitentiary not exceeding ten years; if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted."

We are of the opinion that the indictment in this case is good under these last two statutes; that it charges a felony. In other words, the indictment charges, under

the authority of section 793, an attempt to commit rape as defined by section 1122. There is no statute specifically making it a felony to attempt to commit a rape as defined by section 1122. The attempt to rape as defined by section 787 requires that the attempt shall be by assault or assault and battery with a deadly weapon or other means or force likely to produce death. Section 793 is all-comprehensive. It covers attempts to commit every conceivable crime except those elsewhere specifically provided for. An attempt to rape as defined by section 1122 is not elsewhere specifically provided for.

While Gladys King, the injured female, was testifying as a witness, she was asked on cross-examination by the appellant's attorney whether or not one Hal Conn walked up on her while she was in a compromising situation some time in September, 1931. On the district attorney's objection, the witness was not permitted to answer the question. This action of the court is assigned and argued as error by appellant.

It was held in Wilkerson v. State, 106 Miss. 633, 64 So. 420, that in a prosecution for rape the bad reputation of the prosecuting witness for unchastity existing prior to the date of the alleged crime is admissible in evidence to show that the sexual intercourse may have been consented to by her. In the present case there was no attempt by the appellant to show the bad reputation of Gladys King for unchastity. At most, there was an effort on the part of the appellant to show an isolated act of sexual intercourse on her part, and furthermore the crime charged in the present case was an attempt to rape, while in the Wilkerson Case the crime charged was rape. There was no pretense of claim on the part of appellant that Gladys King consented to the assault committed upon her. His sole defense was an alibi—if the assault was committed, it was by some one else and not by appellant. We think the evidence sought to be brought out by appellant was wholly irrelevant to the issue.

Gladys King testified over appellant's objection that Mattie McGhee and Mary Luster came to her home and offered on behalf of appellant to compromise this case in the absence of any showing that appellant sent them. Appellant's attorney first questioned Gladys King in reference to this matter; thereafter on redirect examination the district attorney called on the witness to give the entire conversation. The court first held the testimony competent and allowed it to go in, and later ruled it out, using this language in response to the objection of the appellant's attorney: ''I understand; but you brought out the fact that they were down there and had a conversation and brought out part of the conversation. But I sustain the objection, I don't think it makes much difference anyway.''

We do not think appellant was harmed by this action of the court. If he was harmed in any degree he was as much responsible for bringing out the objectionable testimony as was the district attorney. Therefore he had no right to complain.

Appellant assigns and argues as error the action of the court in permitting the witness Jim Thomas to testify, over appellant's objection, what Gladys King said to him in reference to appellant breaking into her house and trying to rape her. The following develops what occurred out of which this question arises:

''Q. Did you see Gladys King pretty soon after the gun fired? A. Yes, sir, shortly after she came to our house.

''Q. Did she make any complaint to you at this time that this defendant had broken into her house and was trying to rape her? A. Yes, sir. Defendant objects as to what was said about trying to rape her.

''By the court: Objection sustained. To which ruling the state excepts.

''By the court: Gentlemen of the jury you won't consider what the witness said except about his breaking in.''

Concede for argument's sake that the court erred in refusing to rule out the testimony of the witness to the effect that Gladys King, soon after the attempted rape, stated to him that appellant broke into her house. How was appellant prejudiced? The court ruled out the testimony of the witness that Gladys King stated that the appellant was trying to rape her. There was left only the testimony of the witness that Gladys King stated to him that appellant broke into her house. Gladys King had testified to that fact. Appellant had denied it. It is permissible in a case of this character for the state to show that the injured female made complaint of her injury shortly after the assault upon her, but may not show the particulars stated by her nor that she charged the defendant with the wrong. Ashford v. State, 81 Miss. 414, 33 So. 174; Clark v. State, 124 Miss. 841, 87 So. 286; Sanders v. State, 158 Miss. 234, 130 So. 112. We do not think on this state of the record that that action of the court was reversible error.

Appellant complains of the action of the court in granting the state the following two instructions:

"The court charges the jury for the state that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Horace Barnes, feloniously designed and endeavored to have carnal knowledge of Gladys King, and that against her will he used force and violence upon her body toward the accomplishment of his purpose, but failed to accomplish the same, then you should find the defendant guilty as charged, and your verdict should be: We, the jury, find the defendant guilty as charged."

"The court charges the jury for the state that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Horace Barnes, did unlawfully and feloniously make an assault upon Gladys King, a female person over the age of twelve years, in an attempt to forcibly ravish and carnally know her, the

said Gladys King, at the time and place and in the manner and form as charged in the indictment, you should find the defendant guilty as charged."

We are of the opinion that there was no error in giving these instructions. They were fully justified by the evidence in this case. Appellant's only criticism of these instructions is that they are confusing. We think the criticism is without foundation.

Appellant assigns and argues as error the action of the court in refusing to instruct the jury, at his request, that they could not convict the appellant upon the uncorroborated evidence of Gladys King. It was not necessary under the law that the evidence of Gladys King be corroborated. Fairley v. State, 152 Miss. 656, 120 So. 747; Reeves v. State, 159 Miss. 498, 132 So. 331, 332; Monroe v. State, 71 Miss. 196, 13 So. 884.

Appellant assigns and argues as error the action of the court in refusing the following instruction requested in his behalf: "The court instructs the jury for the defendant that the burden of proof in this case is upon the state to prove that Horace Barnes made an assault upon Gladys King as charged in the indictment. The defendant does not have to prove that he was at the home of Mattie McGhee at the time Gladys King says he was at her house, making this assault upon her, and if the state has failed to show beyond a reasonable doubt and to a moral certainty that Horace Barnes was not at the home of Mattie McGhee, at the time Gladys King says he was at her home making an assault upon her, then you will find the defendant not guilty."

The same instruction, in substance, had already been given for appellant in this language: "The court instructs the jury for the defendant if there is a probability arising out of the evidence that Horace Barnes was at the home of Mattie McGhee at the time Gladys King testified he was at her house, making an assault upon her, then you will find the defendant not guilty."

Appellant assigns and argues as error the action of the court in overruling his motion for a new trial. The basis for this motion is the separation of the jury. The jury had been out considering appellant's case for some time; they indicated to the bailiff in charge that they had reached a verdict and were ready to report the same to the court. At the time another case was being tried of wide interest in the county. The courthouse was full of · people; they were crowding in the corridor entering the courtroom and in the aisles. At the time the jury stated they were ready to report their verdict to the court, a witness was testifying in the case then in trial. When this witness was through with his testimony, the bailiff in charge of the jury brought the jury in before the court, and the foreman handed their verdict to the clerk, which was read by the clerk to the court, being a verdict of guilty as charged. Immediately after this was done, it was discovered that there were only eleven jurors present. The jury had considered and decided the case in the grand jury room, and in passing from that room to the door of the court room it was necessary, to account of the large crowd, for it to wedge its way through the crowded corridor and through the courtroom. In its progress from the grand jury room to the presence of the court one of the jurors got cut off from the others. As soon as this was discovered by the bailiff in charge he immediately went after him, and in two or three minutes after the eleven returned the verdict of the jury the twelfth man was in the presence of the court. Whereupon the twelve jurors were polled, each stating that the verdict handed to the clerk was his verdict. Appellant's position is that the separation of the jury vitiated their verdict. On the motion for a new trial the evidence tended to show that there was no outside influence brought to bear on this lost juror, nor any attempt in that direction. On the contrary, the evidence showed that he had agreed

to the verdict of guilty as charged before the jury ever left the room where they were deliberating.

In overruling the motion for a new trial, the court held that the verdict returned was the verdict of all the members of the jury, and that the separation which lasted only two or three minutes had no influence or bearing whatever on the verdict. We think the court was fully justified in so holding. There is no decision of our court directly in point on its facts.

The attorney general contends that, where the jury reaches a verdict and is separated before tendering it into court, such separation will not vitiate the verdict, and to sustain that position cites Beyerline v. State, 147 Ind. 125, 45 N. E. 772; State v. Whittier, 21 Me. 341, 38 Am. Dec. 272; Russell v. State, 11 Tex. App. 288; Boyett v. State, 26 Tex. App. 689, 9 S. W. 275. We have examined the Indiana case referred to. The court held in that case that the fact that the jury in a criminal trial was allowed by the court, after agreeing on their verdict and sealing it, to separate before they returned the verdict into court, was not a ground for a new trial where no harm to the defendant resulted therefrom. We do not mean to give our approval to the decisions in those cases, nor do we mean to disapprove them. We do hold, however, that under the facts of this case, where it is shown that the separation of the jury occurred after the verdict had been agreed on and written, and that in a few minutes after the eleven jurors had returned the verdict into court the twelfth juror was present and stated that it was his verdict, and there appeared from the evidence that no outside influence had been brought to bear on the twelfth juror which had any influence on this verdict, the separation was without harm and was no ground for a motion for a new trial.

Affirmed.