349 So.2d 1050 (1977)
George Nedon FAIRLEY, Jr.
v.
STATE of Mississippi.
No. 49962.
Supreme Court of Mississippi.
September 14, 1977.
Roger Dean Harris, Biloxi, for appellant.
A.F. Summer, Atty. Gen. by Henry T. Wingate, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
*1051 PATTERSON, Chief Justice, for the Court:
George Nedon Fairley, Jr., Bennie Frank Davis, L.J. Fairley and Samuel Perry were indicted in the Circuit Court, First Judicial District of Harrison County for the murder of Mabel Johnson. George Fairley, the appellant, and Davis, half-brothers, were jointly tried on April 29, 1976. The trial resulted in Davis pleading guilty to manslaughter and being sentenced to five years in the penitentiary. Fairley was found guilty by jury verdict and sentenced to life imprisonment.
Mildred Perry testified that on December 20, 1975, she, Davis, George Fairley, L.J. Fairley and her brother Nathaniel Perry, met at the Fairleys' home and decided that George would kill Mabel Johnson.[1] They left in an automobile driven by Davis and stopped for George Fairley to purchase a gun and L.J. Fairley some ammunition.
They then drove in search of Mabel Johnson and upon discovering her crossing a street, George Fairley ordered Davis to pull over and left the car with a gun. Both L.J. Fairley and Nathaniel Perry, who also were armed, and Mildred Perry got out of the car. When George Fairley approached Mabel, she said, "I thought I told ya'll not to come on the front. If you are going to do anything to me, do it to me now." When they were about ten feet from each other and as Mabel was reaching into her shoulder purse, which hung at hip level, George shot her exclaiming, "I done killed that bitch." They left the scene and discarded the weapon. The following day George Fairley and Mildred Perry surrendered to the authorities after hearing Davis was in jail.
Willie Bridges, an on-scene witness, testified he heard the shot and saw Mabel fall. He stated that he observed George Fairley and another standing at the scene with what appeared to be shotguns and then leaving in a car. Bridges picked up a purse where the shooting occurred and discovered that it contained what appeared to be a butcher knife which he gave to Mabel's brother.
The coroner testified that the victim died of gunshot wounds to the chest which had been penetrated by fifteen pellets. There were powder burns around the edge of the wound indicating the gun was fired at close range.
James Wilson, a prospective witness for the state, was not found although he was twice subpoenaed. The state called Albert Fountain, a deputy sheriff, to the stand who testified on rebuttal that he had conversed with Wilson at the scene and Wilson told him the following:
Q... . Who gave you that description?
A. I think it was Mr. Wilson.
Q. Did Mr. Wilson give you the information as to the driver of the car?
A. He said possibly Bennie Frank Davis.
Q. Did he tell you who was riding with him?
A. He said it looked like one of the Fairley boys, it looked like George Fairley.
The attorneys for the defendants objected to this testimony on the grounds it was hearsay and, when it was overruled, moved for a mistrial. The court overruled the motion and offered to instruct the jury to disregard any hearsay testimony given by the witness. Defense counsel refused stating, "No, I don't think it's necessary to reinforce this in the minds of the jury."
After both sides had rested, but before final argument and out of the jury's presence, Davis pleaded guilty to manslaughter and was later sentenced to five years imprisonment. When the jury returned, the court instructed it that a motion for severance had been sustained and Davis was no longer a part of the case. No mention was made that he had pleaded guilty to manslaughter.
*1052 Fairley's cause was submitted to the jury which returned a verdict of guilty and he was sentenced to life imprisonment as previously mentioned.
He assigns as error the following:
1. The trial court erred in not granting a severance because a fundamental conflict would have arisen in having one defendant testify in behalf of the other.
2. The trial court erred in failing to grant a mistrial when the district attorney elicited prejudicial hearsay statements from one of its witnesses.
The appellant acknowledges that if a motion for severance is made after arraignment, the decision thereon is within the sound discretion of the trial judge, citing Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950). This is in accord with established law. Johnston v. State, 232 Miss. 102, 98 So.2d 445 (1957), and Malone v. State, 77 Miss. 812, 26 So. 968 (1900). He argues, however, there were circumstances attending this case from which the denial of a severance was totally prejudicial to the appellant. He contends the Sixth Amendment to the Constitution of the United States guarantees a defendant the right to compulsory process in order that a defendant may obtain his witnesses and that the right to establish a defense by the presentation of witnesses is a fundamental element of due process of law, citing Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). From this premise the argument is made that the appellant had the right to call Bennie Frank Davis as a witness in his behalf, but had he done so, a fundamental conflict would have arisen between the two because Davis had a constitutional right to remain silent and therefore could not be compelled to testify in behalf of the appellant. It is then stated that the appellant could not enjoy the fruits of his Sixth Amendment right to a witness so long as Davis was a codefendant because he could refuse to testify under his constitutional privilege. From this dilemma of constitutional privileges it is contended the only logical solution was a severance at the beginning of the trial.
We are of the opinion that the trial court did not abuse its discretion in denying the severance. In reaching this conclusion, we observe the motion for severance was not timely and the present argument is one of conjecture because Davis was not offered as a witness and necessarily did not plead the Fifth Amendment and moreover, there was no proffer of his evidence. The trial court was confronted with the same abstract theory. Under these circumstances we are of the opinion there was no abuse of discretion in denying the severance.
The next argument is focused upon problematical prejudice arising from the severance granted at the conclusion of the trial but before final argument when Davis pleaded guilty. Such a sudden turn on the part of the trial judge, it is contended, was prejudicial because it created a situation where it was impossible for Davis to plead guilty without prejudicing the jury against the appellant and placed his counsel in a difficult position. In elaboration it is argued the attorneys were faced with the insurmountable task of exculpating one of the defendants while avoiding the possible inculpation of the other, the ultimate result being that counsel was inhibited in their defense of appellant. We observe that the jury was advised only of the severance and therefore, had no knowledge of Davis' plea. We conclude, as we think we must, that no prejudice resulted to the appellant from this turn of events which would require reversal. Indeed, we doubt there was any prejudice at all.
The next assignment is directed to prejudicial and hearsay testimony elicited by the state's attorney. The record clearly discloses that defense counsel provoked the questions by the district attorney because he first interrogated Fountain, the state's witness, at great length on the same subject. In this posture the hearsay testimony responsive to the district attorney's questions was not error. Stone v. State, 210 Miss. 218, 49 So.2d 263 (1950), and Barnes v. State, 164 Miss. 126, 143 So. 475 (1932).
*1053 The trial court in ruling on the motion for a mistrial commented that defense counsel precipitated the questions and offered to instruct the jury to disregard the hearsay answers, but this offer was rejected by the defense counsel. We are of the opinion from the overall circumstances that no prejudicial error emanated from the hearsay testimony.
A detailed review of this record reveals premeditated murder supported by abundant and unequivocal testimony and a fair trial absent prejudicial error. The conviction and sentence are affirmed.
AFFIRMED.
INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] The murder was apparently one of revenge arising from the previous slaying of the defendants' sister by Mabel Johnson.