# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00179-SCT

*DONNIVER TERRELL JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/23/2004 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MARK DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Donniver Terrell Johnson was indicted on two drug counts; Count One for the sale of a Schedule II controlled substance, namely cocaine, pursuant to Miss. Code Ann. § 41-29-139(a)(1), and Count Two for the sale of a Schedule I controlled substance, namely marijuana in an amount of less than one ounce, pursuant to Miss. Code Ann. § 41-29-139(b)(3).   Johnson was tried by a jury in the Circuit Court of Leake County, Mississippi, the Honorable V.R. Cotton, presiding, for the crimes of selling and delivering these drugs.   Johnson was convicted

on both counts of the indictment by the jury and sentenced on Count One to serve a term of thirty (30) years in the custody of the Mississippi Department of Corrections (MDOC), and on Count Two to serve a term of three (3) years in the custody of MDOC with this sentence to run concurrent with the sentence of Count I, all for a total of thirty (30) years to serve and enrollment in the drug and alcohol program at MDOC. The trial court denied Johnson's post-trial motion for new trial. Johnson now appeals to this Court.

**FACTS**

¶2. On June 6, 2002, Agent Charlie Hill of the Mississippi Bureau of Narcotics and a confidential informant went to a residence at 407 Triplett Street in Carthage, Leake County, Mississippi. Agent Hill was acting as an undercover agent. The informant went inside the residence. After a few seconds, the informant came back outside and waved Agent Hill into the residence. Once inside, Agent Hill saw a number of men gambling at a table. He also saw a black male wearing a white shirt and blue jeans with a low haircut and a goatee standing in the kitchen.

¶3. Agent Hill made two purchases of drugs from the male. In the first transaction, Agent Hill asked for a "50" which was $50 worth of crack cocaine. The male placed three rocks of cocaine on the counter and told Agent Hill to place $50 on the counter. In the second transaction, Agent Hill asked if the male had any marijuana. Agent Hill asked for a "dove sack" which is $20 worth of marijuana. The male placed some marijuana on the counter and told Agent Hill to place the money on the counter.

¶4. Agent Hill testified that the lighting in the residence was good. He could clearly see the person that had sold the drugs. At trial, Agent Hill identified Johnson as the person that

2

sold the drugs to him. After receiving the drugs, Agent Hill and the informant left the residence. Agent Hill and the informant then attended a post-buy meeting, with Agent Alan Ward. Agent Hill turned the drugs over to Agent Ward.

¶5. Brandi Goodman (Goodman), a forensic scientist specializing in the field of drug identification at the Mississippi Crime Lab, testified that she tested the substances submitted to the crime lab. She stated that the substances were 0.37 grams of cocaine and 3.3 grams of marijuana.

> **I.** **Whether the trial court erred by admitting an amended drug document.**
>
> **II.** **Whether the trial court erred by denying Johnson the right to cross-examine Agent Hill.**
>
> **III.** **Whether the trial court erred by excluding a photograph from evidence.**

## DISCUSSION

**I.** **Drug Document.**

¶6. Johnson argues that the trial court erred by admitting a report showing a correction to a discrepancy in the amount of drugs submitted to the Mississippi Crime Lab. In addition, he argues that he was denied his right to confront witnesses against him, namely Marie Pace, an evidence technician at the Mississippi Crime Lab and Grady Dowdy, another Mississippi Crime Lab employee. Pace made a correction to a report that explained a clerical error on the evidence package weight. Dowdy weighed the package.

¶7. The State called Goodman to testify about the substances submitted to the crime lab. She stated that the substances were 0.37 grams of cocaine and 3.3 grams of marijuana.

3

¶8.     During Goodman's cross-examination, the defense introduced Exhibit D-2, an evidence submission form, which was signed by Dowdy.     The form indicated that the drugs and the packaging weighed a total of 6.9 grams.[1]     Defense counsel also offered into evidence Exhibit D-3, a drug analysis report.   This report indicated that the total package weight was 9.0 grams.[2]

¶9.     On redirect examination, the State attempted to clarify the discrepancy in the total package weights.   The State introduced S-2 which contained a corrected evidence submission form and a memorandum for record form.   The State's report, Exhibit S-2, indicated that there had been a clerical error in the labeling of two evidence packages submitted to the crime lab.

¶10.     Apparently, Agent Ward submitted two evidence bags for two different cases on June 14, 2002.   Only one of these evidence bags related to Johnson's case. However, the crime lab was informed later that the description labels of the two evidence packages had been inadvertently switched.   Thereafter, the bar code descriptions placed on the two evidence packages were corrected to reflect the correct package description.

¶11.     Johnson objected to the introduction of the State's Exhibit S-2.   In specific, Johnson argues that testimony from Goodman concerning the memorandum of record form was hearsay because Goodman did not generate the corrected report. Another crime lab employee, Pace, made the corrections to the report.   Pace, however, was not called to testify at trial.   In addition, another employee, Downy, weighed the substances, and he was not called to testify at trial. Further, Johnson argued that Goodman's testimony, about how she understood the discrepancy

---

[1] The transcript indicated that this Exhibit is marked as D-2, however, it is listed as D-1 on the actual exhibit forwarded to the Court in the exhibit folder.

[2] The transcript indicated that this Exhibit is marked as D-3, however, it is listed as D-2 on the actual exhibit forwarded to the Court in the exhibit folder.

4

had occurred, was inadmissible because Goodman related what she understood to be separate conversations between Pace, Agent Ward and Dowdy concerning the discrepancy. Therefore, Johnson claims that the document and the explanation were inadmissible as (1) hearsay; (2) denial to the right of confrontation of a witness against an accused; and (3) a violation of M.R.E. 602.

¶12. The trial judge ruled that the document was admissible and stated:

> All right. The matter arose based on cross-examination which as I – if I follow what was sought to be developed on cross, that there is a possible clerical error or mix-up as far as the document identification.
>
> That, of course, smacks [of] a possible custody problem or something or if it does, maybe not centrally, but possible and of course, unless there is some evidence of tampering, then there's presumed to be -- custody is presumed to be correct.
>
> The witness here is here to testify regarding the content of the in-house document that you caused to be introduced into evidence. She can vouch for it, I'm going to let her do that and clear up any discrepancy so it will be palatable and clear for the jury. You will have her for a full bore cross examination so your objection is overruled. Go ahead.

¶13. After a number of other objections by defense counsel, the trial court further ruled:

> Let me, in addition to the ruling I've made on your objection, note that the exceptions to the hearsay rule under 803 and following, there is a rule exception 24 regarding other exceptions which, of course, is used where there must be given notice to the adverse party.
>
> The applicable rule that I'm thinking about has to do with trustworthiness and that is what I believe is, I think we crossed that threshold. This witness is accepted by the Court as an expert in her field, she has testified as to her opinion and then called upon now to testify as to something dealing with a form rather than substance.
>
> The form being the clerical errors on the documents. The Courts believes that this hurdles any exception as far as an exception to the hearsay rule.

Your objection is noted. The objection is overruled. Let it be marked.

¶14. We find that the trial court did not err by admitting the State's Exhibit S-2. The defense admitted into evidence two reports containing contradictory amounts of evidence with total package weights of 6.9 ounces and 9.0 ounces, respectively. Once the defense cross-examined Goodman on these documents, the door was opened for the State to discuss and attempt to admit Exhibit S-2 into evidence to clarify and explain the discrepancy for the different package weights.

¶15. "It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial." *Fleming v. State*, 604 So.2d 280, 289 (Miss. 1992). "Where the defense attorney inquires into a subject on cross-examination of the state's witness, the prosecutor on rebuttal is certainly entitled to elaborate on the matter." *Murray v. State*, 849 So.2d 1281, 1288 (Miss. 2003).

¶16. As far as Johnson's argument that Goodman's explanation testimony was hearsay, we find that it is without merit. In *Fairley v. State*, 349 So.2d 1050 , 1052 (Miss. 1977), this Court found that hearsay testimony elicited by the State's attorney was not error where "[t]he record clearly disclose[d] that defense counsel provoked the questions by the district attorney because he first interrogated Fountain, the state's witness, at great length on the same subject" therefore "the hearsay testimony responsive to the district attorney's questions was not error." *Fairley*, 349 So.2d at 1052 (citing *Stone v. State*, 210 Miss. 218, 49 So.2d 263 (1950), and *Barnes v. State*, 164 Miss. 126, 143 So. 475 (1932)).

¶17. In this case, Johnson entered two documents into evidence during Goodman's testimony which showed a discrepancy in the amount of total package weight of the substances. The State

on redirect examination, therefore, could attempt to admit the third document, S-2, into evidence to clarify the discrepancy and ask Goodman questions concerning this discrepancy. As Johnson initially entered the reports with different total package weights, he cannot complain that he was prejudiced by the introduction of the State's Exhibit S-2 because he made the reports an issue in his cross examination. Further, Agent Ward delivered the two evidence packages to the crime cab and testified at trial. Johnson, however, never questioned Agent Ward on this issue at trial. Accordingly, we find that this issue is without merit.

## II. Agent Hill Cross-examination.

¶**18.** Johnson next argues that when Agent Hill was recalled by the State during an identification hearing, defense counsel was denied an opportunity to cross-examine him in violation of M.R.E. 611.

¶19. During Agent Hill's testimony, he indicated that when he bought drugs at the Triplett Street residence, the lighting was good and he could clearly see the person from whom he bought cocaine and marijuana. When the State asked Agent Hill if he could identify the person that sold him the drugs in the court room, defense counsel objected.

¶20. The trial judge then allowed defense counsel to voir dire Agent Hill outside the presence of the jury. Following the defense's voir dire, the trial court also questioned Agent Hill. Defense counsel declined an opportunity to ask further questions of Agent Hill at the conclusion of the trial court's questions. The State then asked a few questions. At this point, defense counsel requested to call one or two witnesses.

¶21. The trial court allowed Johnson to call Jackie Wilder, Johnson's mother, to the stand. Wilder identified Johnson in some pictures taken in May 2002 in which he had long, braided

7

hair. She testified that his hair was long throughout the year 2002. On cross-examination, Wilder admitted that Johnson could have changed his hair style between May and June 2002. Following the State's cross-examination of Wilder, defense counsel declined to further question the witness. After the trial court's ruling allowing the State to ask Agent Hill if he could identify Johnson, defense counsel was instructed by the trial court that it would be given an opportunity to cross-examine Agent Hill in front of the jury. Indeed, when Agent Hill testified before the jury for a second time, defense counsel questioned him about Johnson's alleged low haircut.

¶22. We find that the trial court did not abuse its discretion by ruling that the State could ask Agent Hill if he could identify the person that sold him drugs. Johnson's counsel was given ample opportunity both in the presence of the jury and during voir dire to question Agent Hill concerning the identification of Johnson. The record is clear on this matter. This issue is without merit.

### III. Photograph.

¶23. Johnson argues that the trial court erred by denying the admission of photographs of him with long, braided hair. Johnson allegedly sold Agent Hill drugs on June 6, 2002. There was a dispute as to what hair style Johnson wore on June 6, 2002. Johnson contended that he had long, braided hair at the time of the drug deal, whereas Agent Hill described Johnson as having a low haircut on the date of the drug transaction.

¶24. During the trial, defense counsel was allowed to question Agent Hill about the description of Johnson's haircut on June 6, 2002. This questioning was done in voir dire and outside the presence of the jury. Agent Hill stated that when he arrived at the house on Triplett

8

Street there was good lighting and Johnson had a low haircut. Johnson called his mother to testify in voir dire. She claimed that Johnson had long, braided hair in May 2002.

¶25. Johnson wanted to have a number of photographs admitted into evidence depicting him with long, braided hair. These pictures were taken by Wilder and her daughter at Johnson's brothers's graduation ceremony in May 2002, prior to the June 2002 drug deal. Johnson also wanted some booking photographs of himself from dates after June 6, 2002, to be admitted into evidence. The photographs of Johnson at the time of his brother's graduation are not part of the record for our review. The only photograph in the record is actually a booking, colored photocopy of Johnson, with a handwritten date of August 24, 2002, on the right hand side of the page. In the booking photograph, Johnson had braided hair. The braids are directly connected to his scalp in what appears to be a circular pattern.

¶26. The State objected to the graduation pictures as being irrelevant because the alleged crime occurred after the date of the pictures. Therefore, the State contended that Johnson could have changed his hair style from May 2002 to June 2002 and the pictures were not timely to the event. Wilder, thereafter testified that Johnson had his hair long and braided in May 2002 and throughout the year 2002.

¶27. Initially, the trial court admitted the graduation pictures into evidence. On cross-examination by the State, Wilder later admitted that Johnson could have changed his hair style between May and June 2002. After this testimony, the trial judge and counsel had a conference, and the trial court reversed its previous ruling. The trial court found that it was error to admit the photographs based on the time the photographs were taken. The trial court stated in part:

The Court believes that it may have [been] premature on [the admission of the graduation photographs] and that it would be an error as far as the timeliness of those pictures at this time as well as call other witnesses in support of negating the attempted identification of the defendant in Court. That this would be a matter rather for rebuttal.

The trial court also denied the admission of the booking photographs on the same basis as the graduation photographs.[3] As noted above only one booking photograph is part of the record on appeal.

¶28. Johnson argues that the photographs were relevant and therefore should have been admitted into evidence pursuant to M.R.E. 401 and 403. This Court set forth the standard of review for the admission of photographs in *Jackson v. State*, 784 So.2d 180, 182-83 (Miss. 2001). This Court held:

The admissibility of photographs generally lies within the sound discretion of the trial court; and, absent an abuse of discretion, the court's decision will be upheld on appeal. *Taylor v. State*, 672 So.2d 1246, 1270 (Miss.1996). As to probative value versus prejudice, this Court held in *Foster v. State*, 508 So.2d 1111, 1117-18 (Miss.1987), that because of the discretion vested in the trial court, the task of an appellate court reviewing a M.R.E. 403 ruling is not to re-engage in the Rule 403 balancing process. Rather, the task is simply to determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence. *Id*.

*Jackson*, 784 So.2d at 182-83.

¶29. We find that the trial court did not abuse his discretion by excluding the photographs. The trial court found that the photographs were untimely in relation to the drug sale in June

---

[3] Johnson never actually made a specific request to admit these booking photographs at trial, rather he requested that the booking photographs be disclosed to defense counsel and that defense counsel had the opportunity to review the photographs before continuing with the trial. Nevertheless, the trial court ruled on the admission of these photographs as well. The State was given the photographs moments beforehand at trial, and the trial court gave Johnson's counsel the photographs.

2002. The graduation photographs were taken in May 2002, a month prior to the alleged drug sale in June 2002. Further, Johnson's mother stated that Johnson could have changed his hairstyle between the months of May and June 2002. The other photograph was a booking photograph not associated with the June 2002 drug transaction. Pursuant to M.R.E. 401 and 403, the trial court acted within its discretion in excluding the photographs.

## CONCLUSION

¶30. We affirm the judgment of the Circuit Court of Leake County, Mississippi.

¶31. **COUNT I: CONVICTION OF THE SALE OF A SCHEDULE II CONTROLLED SUBSTANCE (COCAINE) AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF THE SALE OF LESS THAN ONE OUNCE OF A SCHEDULE I CONTROLLED SUBSTANCE (MARIJUANA) AND SENTENCE OF THREE (3) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I, ALL FOR A TOTAL OF THIRTY (30) YEARS TO SERVE.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**