# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-01412-SCT

*ANTHONY JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2004 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS PERRY SETSER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/02/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     On October 28, 2003, a Warren County grand jury indicted Anthony Jones on charges of aggravated assault, kidnapping, and unlawful possession of a firearm after having been convicted of a felony.  Jones was also charged as a habitual offender pursuant to the provisions of Miss. Code Ann. Section 99-19-81.  A subsequent trial resulted in the jury finding Jones guilty on all three counts of the indictment, and circuit court Judge Frank G. Vollor then sentenced Jones as a habitual offender to serve consecutive terms of twenty, thirty and three years, respectively, in the custody of the Mississippi Department of Corrections.  After Judge Vollor denied his motion for a judgment notwithstanding the verdict, or, in the alternative, for

a new trial, Jones perfected this appeal, alleging that multiple errors occurred at his trial. Finding Jones's assignments of error to be without merit, we affirm the final judgment of conviction and sentences imposed by the Circuit Court of Warren County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Taquelia Thomas was employed as a transportation driver for the Mississippi Department of Human Services (MDHS) and her friend, Keisha Smith, was one of Thomas's regular passengers. On September 6, 2003, Smith requested that Thomas drive over to her apartment. Unbeknownst to Thomas, her ex-boyfriend, Anthony Jones, was also at Smith's apartment, and Jones had convinced Smith to invite Thomas to come to Smith's apartment. When Thomas arrived, Smith walked out to meet her on the street and engaged her in conversation through the van's driver side window. According to the testimony of both Smith and Thomas, before they knew what was happening, Jones rushed the van and began climbing his way through the open driver's side window. In an effort to escape Jones's aggression, Thomas placed the MDHS van in reverse, backed down the street, and drove over a curb almost striking a light pole.

¶3. Despite Thomas's efforts to get away, Jones was able to secure himself in the passenger seat of the van. Although the struggle inside the van continued from the time the van left Smith's residence until the time it returned, Thomas managed to drive the van back up the street and in front of Smith's house, where a group of onlookers had gathered. Testimony reveals that, upon their return, Jones had Thomas in a headlock and was trying to convince her to drive away. According to Smith, it was at this point that she intervened by reaching into the stopped van and

2

taking the keys out of the ignition. Smith testified further that she ultimately talked Jones into letting Thomas go and leaving the neighborhood. While Jones admits to climbing into the van, he maintains that once he saw Thomas was frightened, he apologized to her and left.

¶4. On the following day, September 7, 2003, Thomas went to her mother's house at 2706 Washington Street. According to Thomas's testimony, she was leaving her mother's house when she was accosted by Jones who grabbed her, placed a gun to the left side of her head and threatened to shoot her if she screamed. Thomas maintains that Jones then snatched her keys, and physically forced her into her van against her will. Importantly, Thomas testified that she did not want to get into the van with Jones, but did so because Jones had a gun to her head and was holding her around the neck.

¶5. While making his escape, with Thomas in the passenger seat next to him, Jones hurriedly backed out of the driveway. As Jones reached the street and prepared to place the van into drive, Thomas escaped. This brief pause at the end of her mother's driveway had afforded Thomas the opportunity to jump from the passenger door and run from the van.

¶6. Eddie Butler was driving south on Washington Street that day when he saw Thomas's MDHS van backing out of her mother's driveway. According to Butler's account, he saw Thomas jump from the van and take off running in a direction that was parallel to the cars on the street, but not in traffic. Butler's testimony revealed that he then saw the van swing back around and head east so as to catch Thomas, and Butler further noted that it looked like the van driver was really trying to hurt somebody. On re-direct examination, Butler specifically stated that "the van swung back like a perfect hit, to catch the young lady with the hood...." Butler

3

likewise testified that Jones hit Thomas with the van, delivering a blow that picked Thomas up on to the hood of the van and pinned her against the windshield. Butler also testified that Jones drove the van, with Thomas on the hood, into a brick and wrought iron fence.

¶7. After Butler exited his truck and ran over to assist Thomas, he found Thomas laying in between the brick support columns of the fence, covered in rubble. Butler thought she was dead. He noted that the truck ultimately careened into a parking lot in close proximity to the accident scene.

¶8. Johnny Thomas (no relation to the victim, Taquelia Thomas) was also traveling south on Washington Street at the time of the incident in question and had stopped to help. Thomas testified that when he came upon the scene, he saw a man standing over a woman with a gun. Recognizing the man to be the son of Billy Ray Warren, Mr. Thomas approached Jones and tapped him on the shoulder. He noted that when he did this Jones quickly fled the scene.

¶9. Taquelia Thomas was taken by ambulance to the hospital, where she spent six to seven weeks recuperating from her injuries. It is without dispute that the injuries Thomas suffered were severe. Thomas had abrasions on her head just under her hairline and on her left arm. She sustained a clavicle fracture, a severe pelvic injury, a broken wrist, lacerated kidneys and lungs and had to have a piece of the wrought iron fence removed from her leg.

¶10. Anthony Jones's testimony was inconsistent with the events as recounted by the State's witnesses. Jones testified that Thomas entered the van voluntarily and jumped out. Importantly, Jones maintained that he never displayed a gun to Thomas and that he did not know that he had hit Thomas with the MDHS van until he got out of the wrecked van.

4

## DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED BY DENYING JONES'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, FOR A NEW TRIAL

¶11. After the jury returned a verdict finding Jones guilty of aggravated assault, kidnapping and possession of a firearm by a convicted felon, the trial judge imposed consecutive sentences of twenty, thirty and three years, respectively, all to be served without the benefit of parole, probation or early release, pursuant to the provisions of Miss. Code Ann. Section 99-19-81. Jones filed a motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial, which motion was subsequently denied by the trial court.

¶12. Jones appropriately combined his request for a j.n.o.v. and a new trial into one motion. However, while both the trial court and, ultimately, the appellate court, might be called upon to address a post-trial motion containing both a request for a judgment notwithstanding the verdict, and an alternative request for a new trial, we certainly recognize the altogether different legal standards applied to each. A motion for a judgment notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict while the motion for a new trial is admittedly "an altogether different animal." *Jesco, Inc. v. Whitehead*, 451 So.2d 706, 713-14 (Miss. 1984) (Robertson, J., specially concurring). Recently, in *Dilworth v. State*, 909 So.2d 731 (Miss. 2005), we reiterated the standard applied to a motion challenging a verdict based on the legal sufficiency of the evidence:

> In *Carr v. State*, 208 So.2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical

5

inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.' However, this inquiry does not require a court to

> 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render[, i.e. reverse and discharge]. *Edwards v. State*, 469 So.2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So.2d 778, 781 (Miss. 1984)); *see also Dycus v. State*, 875 So.2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient.

*Dilworth v. State*, 909 So.2d 731, 736 (Miss. 2005) (quoting *Bush v. State*, 895 So.2d 836, 843 (Miss. 2005)).

¶13. By contrast, in considering a motion for a new trial, different criteria must be considered and applied. "That as a matter of law the motion for judgment notwithstanding the verdict must be overruled and denied in no way affects and little informs the trial judge regarding his disposition of the motion for a new trial." *Jesco*, 451 So.2d at 714 (Robertson, J., specially concurring). As with a j.n.o.v. motion, our law is well-settled concerning our review of the trial court's denial of a motion for a new trial:

6

> A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict. *Id.* at 127.[1] A motion for a new trial simply challenges the weight of the evidence. *Id.* This Court has explained that it will reverse the trial court's denial of a motion for a new trial only if, by doing so, the court abused its discretion. *Id.* (quoting *Gleeton v. State,* 716 So.2d at 1088). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (quoting *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983)). This Court has also explained that factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So.2d 999, 1009 (Miss. 1993).
> *Holloway v. State*, 809 So.2d 598, 605-06 (¶¶ 21-22) (Miss. 2000).

*Ginn v. State*, 860 So.2d 675, 685 (Miss. 2003). *See also **Bush v. State,*** 895 So.2d 836, 844 (Miss. 2005), and URCCC 10.05.

¶14. As in any case in which the trial court has appropriately denied a motion for a directed verdict, and allowed the case to be submitted to the jury, our case today no doubt has conflicting testimony. However, our mandated appellate review does not require, indeed, does not permit, this Court to decide from conflicting evidence what verdict we would have rendered had we been the jury deciding this case. In applying the appropriate standard when considering whether the trial court properly denied a motion for a new trial, reversal is warranted only if the trial court abused its discretion in denying the motion for new trial. *Dilworth v. State*, 909 So.2d 731, 737 (Miss. 2005) (citing *Howell v. State,* 860 So.2d 704, 764 (Miss. 2003); *Edwards v. State*, 800 So.2d 454, 464 (Miss. 2001); *Sheffield v. State,* 749 So.2d 123, 127 (Miss. 1999)). Accordingly, this Court defers to the discretion of the trial judge, and "[w]e will not order a new trial unless convinced that the verdict is so contrary

---

[1] *Sheffield v. State,* 749 So.2d 123 (Miss. 1999).

7

to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983). Reversal according to the above stated standard, unlike reversal based on insufficient evidence, does not imply that acquittal was the only proper verdict. *Bush v. State*, 895 So.2d 836, 844 (Miss. 2005). This being said, the power to grant a new trial should be invoked only in exceptional cases where the evidence preponderates heavily against the verdict. *Id*. (citing *Amiker v. Drugs for Less, Inc.*, 796 So.2d 942, 947 (Miss. 2000)).

¶15. Having set forth the standards under which a trial court proceeds when considering the sufficiency of the proof submitted at trial and the viability of the jury verdict rendered, we now consider what the State was required to prove at trial in order to make out its case for a conviction. Accordingly, because the law presumes every person charged with a criminal offense is innocent, the prosecution carries the burden of proving all elements of the charged offenses beyond a reasonable doubt. It follows that this presumption of innocence attends the defendant throughout the trial and prevails at its close unless and until this presumption is overcome by evidence which satisfies the jury of the defendant's guilt beyond a reasonable doubt. *Jones v. State,* --- So.2d ---, 2005 WL 1712995 (Miss. 2005).

¶16. The first count charged Jones with aggravated assault. The State was thus required to present evidence showing that Jones did purposefully or knowingly cause serious bodily harm to Thomas by running over her with the MDHS van in violation of Miss. Code Ann. Section 97-3-7(2)(b). In choosing to charge Jones under section (b) of the aggravated assault statute, the

8

State assumed the burden of proving that Jones intended to hit Thomas with the van. While it was uncontested that Jones was driving the van and that Thomas suffered life-threatening injuries when she was struck by the van, a factual dispute arose at trial as to whether Jones aimed the van at Thomas before striking her, or whether Jones inadvertently swerved into Thomas while trying to close the passenger door which Thomas had left ajar after jumping out of the van. Jones claims that the State failed to prove its case and that a judgment notwithstanding the verdict, or in the alternative, a new trial, was appropriate since the State had allegedly failed to prove Jones's specific intent.

¶17. In *Harris v. State*, 642 So.2d 1325 (Miss. 1994), a drug dealer attempted to run over an undercover police officer with a car in an effort to escape a drug bust. The defendant was charged with attempted aggravated assault, and the State undertook the burden of proving the drug dealer's specific intent in order to secure conviction. Focusing on the intent element, this Court stated "[i]ntent, being a state of mind, is rarely susceptible of direct proof, but ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them." *Id.* at 1327 (citing *Thames v. State*, 221 Miss. 573, 577, 73 So.2d 134, 136 (1954)).

¶18. In *Harris*, just as with today's case, there was undisputed evidence that Harris did hit a police officer; however, there was disputed evidence as to whether Harris did so intentionally. Faced with this conflict in the evidence, this Court stated that the evidence adduced was such that fair-minded jurors might reach different conclusions as to the issue of intent. 642 So.2d at 1327. Accordingly, Harris's version that he never intended to run over

9

anyone, and never knew he had, when contrasted with testimony that Harris left his lane of travel to accomplish the hit and even attempted to run over the police officer a second time, created a disputed question of fact for evaluation by the jury. *Id*.

¶19. Turning to today's case, the State supported its charge of aggravated assault against Jones with the eyewitness testimony of Eddie Butler. Butler testified that he saw the MDHS van pull out of the driveway at the house of Thomas's mother. Butler also observed Thomas jump out of the van and the van turning back around heading east to catch Thomas. Butler specifically observed that the van swung back in such a fashion so as to accomplish a "perfect hit" on the woman in flight.

¶20. Butler's testimony, when coupled with the undisputed facts, clearly proved the element of intent necessary to support the State's charge of aggravated assault. Moreover, based on all the testimony offered at trial, a juror could easily conclude beyond a reasonable doubt that Jones intentionally hit Thomas with the van. Thus, a grant of a j.n.o.v. or a new trial would have been inappropriate because the State supported all elements of the offense with sufficient evidence.

¶21. The second count of kidnapping required the State to prove that Jones seized Thomas with the intent to confine or imprison her against her will pursuant to Miss. Code Ann. Section 97-3-53. Jones maintains that the State's only evidence of kidnapping is the testimony of Thomas, which was directly contradicted by Jones and is not credible inasmuch as Thomas has a history of shoplifting and providing false information. Accordingly, he argues that the weight

10

of the evidence does not permit a reasonable fair minded jury to believe that Thomas was indeed kidnapped.

¶22. We have held that the jury is charged with the duty of judging credibility. *Jackson v. State*, 614 So.2d 965, 972 (Miss. 1993) (citing *Harris v. State*, 527 So.2d 647, 649 (Miss. 1988); *Groseclose*, 440 So.2d at 300). In *Jackson*, we acknowledged the critical importance of deferring to the province of the jury as the fact-finder:

> Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.

*Jackson v. State*, 614 So.2d 965, 972 (Miss. 1993) (citing *Gandy v. State*, 373 So.2d 1042, 1045 (Miss. 1979)).

¶23. While the jury most assuredly relied on the testimony of Thomas in determining the requisite elements of kidnapping, the jury was also privy to the whole of trial testimony in order to determine Thomas's credibility and that of Jones's conflicting testimony. Accordingly, this was a case of conflicting evidence presented to a jury on a factual dispute, and the jury obviously resolved the credibility issues against Jones. Additionally, there is corroborating testimony regarding the surrounding circumstances that Jones was in possession of a gun on the date of the incident, and that Thomas jumped from her own van and took flight.

11

Johnny Thomas also testified that as he traveled down Washington Street, he saw a man (whom he knew as Billy Ray Warren's son – Jones) standing over a woman (Thomas) with a gun. All this having been said, the testimony of Taquelia Thomas and Johnny Thomas was not only sufficient to submit the kidnapping charge to the jury, it was also sufficient to support a jury's decision to convict Jones of kidnapping.

¶24. The third charge against Jones, possession of a firearm by a convicted felon, required the State to prove from the evidence that on the date in question, Jones, as a prior convicted felon, willfully possessed a firearm. At trial the disputed element of this offense was whether Jones was in possession of a handgun on September 7, 2003. The State not only presented two witnesses attesting to the fact that Jones was in possession of a firearm, the State also introduced Jones's handgun into evidence with additional proof that the gun was recovered when Jones was arrested at someone else's residence at 1706 Martha Street. This Hi-Point 9 millimeter pistol was also unequivocally identified by Thomas at trial as the pistol that Jones had held against her head on the date in question. At the time of its recovery, the clip, with six unspent rounds, was in the pistol. In his defense, Jones offered only his denial of possession of the weapon. Clearly, there was sufficient evidence on this issue for any reasonable juror to find that Jones was in possession of the firearm at the time of his arrest. From the record, it is clear that both post-trial motions concerning the charge of possession of a firearm by a convicted felon were appropriately denied.

¶25. In sum, when we view all the evidence in the light most favorable to the State, we can unhesitatingly conclude that any reasonable, rational and fair-minded juror could have found

12

from this evidence that the State of Mississippi had proved, beyond a reasonable doubt, each and every element of each of the three crimes for which Jones was on trial. Stated differently, we are certainly unable to state that from this evidence, with respect to one or more of the elements of the crimes charged, any reasonable and fair-minded juror in the exercise of sound judgment could only find Jones not guilty of these charges. Also, from the record before us, we are certainly unable to find that the trial judge abused his discretion in denying the motion for a new trial; therefore, the verdict of the jury is beyond our authority to disturb.

¶26. Thus, we find that Jones's assignment of error as to the trial judge's denial of both his motion for a judgment notwithstanding the verdict, and his motion for a new trial, are without merit.

## II. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED EVIDENCE OF THE DEFENDANT'S ACTIONS ON THE DAY PRIOR TO THE INCIDENT IN QUESTION

¶27. Prior to trial, the State filed a motion in limine asking the circuit court to allow evidence showing that Jones assaulted Thomas on September 6, 2003. In its motion, the State argued that this evidence, which concerned a related event which took place just one day before the incident for which Jones was ultimately indicted, was admissible under Miss. R. Evid. 404(b) to establish motive, intent, plan and absence of mistake or accident. At the hearing on this motion, Jones asserted the evidence was inadmissible because the acts were too far removed from the charged conduct; that the State was improperly attempting to offer evidence of another crime; and, that the acts of September 6, 2003, were not part of the *res gestae* of the crime.

13

¶28. Miss. R. Evid. 404(b) specifically provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have expounded upon the well-defined exceptions to this rule and stated:

> Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. Such proof of another crime is also admissible where it is necessary to identify the defendant, where it is material to prove motive, and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. *Neal*, 451 So.2d at 758-59 (citations omitted)....

*Underwood v. State*, 708 So.2d 18, 31-32 (Miss. 1998).

¶29. In *Ballenger v. State*, 667 So.2d 1242, 1257 (Miss. 1995), we explained further:

> [T]he State has a "legitimate interest in telling a rational and coherent story of what happened...." *Turner v. State*, 478 So.2d 300, 301 (Miss. 1985); *Neal v. State*, 451 So.2d 743, 759 (Miss. 1984). Where substantially necessary to present to the jury "the complete story of the crime" evidence or testimony may be given even though it may reveal or suggest other crimes. *State v. Villavicencio*, 95 Ariz. 199, 388 P.2d 245 (1964).

*Ballenger*, 667 So.2d at 1257 (citing *Brown v. State*, 483 So.2d 328, 330 (Miss. 1986)).

¶30. The evidence stemming from Jones's September 6 assault on Thomas is clearly admissible under the exceptions to Rule 404(b). Not only are Jones's actions relevant to his motive for tracking Thomas down and assaulting her again the following day, they also directly pertain to the continuing act of violence to the extent that Jones ultimately accomplished a

14

series of interrelated criminal acts which began the day before on September 6. To hold this evidence inadmissible as evidence of a prior bad act would be to hamstring the State in the presentation of the complete story of Jones's crime. The evidence of the incident of September 6 was not offered to show Jones's character or that he was acting in conformity with a particular character trait. Instead this evidence was offered as part of the very actions for which he was indicted. Thus, we find this issue to be without merit as it relates to admissibility under Miss. R. Evid. 404(b). However, further discussion is necessary on the ultimate issue of admissibility of this evidence pursuant to Miss. R. Evid. 403. This discussion continues below.

### III. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO CONDUCT AN ON-THE-RECORD BALANCING TEST PURSUANT TO MISS. R. EVID. 403

¶31. Jones asserts that he has been denied his due process rights and is entitled to a new trial based on the trial court's failure to perform an on-the-record balancing test pursuant to Miss. R. Evid. 403. In support of this argument, Jones claims that *Smith v. State*, 656 So.2d 95 (Miss. 1995), *overruled in part*, *Brown v. State*, 890 So.2d 901 (Miss. 2004) (abandoning *Smith's* requirement that a trial judge sua sponte give a limiting instruction), requires a trial court to consider whether the probative value of questionable evidence is substantially outweighed by the danger of unfair prejudice. Specifically, Jones argues he was unfairly prejudiced when the trial court failed to perform an on-the-record Rule 403 analysis and thus improperly allowed the evidence stemming from his September 6 assault on Thomas.

15

¶32. Once proof of other crimes or acts of a defendant are deemed admissible pursuant to the exceptions found in Miss. R. Evid. 404(b), this otherwise admissible evidence must still survive the required balancing test pursuant to the provisions of Miss. R. Evid. 403. Accordingly, just as with any evidence otherwise admissible under any other evidentiary rule, evidence which is deemed admissible pursuant to Rule 404(b) may still be excluded if its probative value is substantially outweighed by the danger of its resultant unfair prejudice. This Court has consistently recognized the broad sweeping effect of Rule 403:

> To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass. *Watts*, 635 So.2d at 1368 (quoting *Jenkins v. State*, 507 So.2d 89, 93 (Miss. 1987)). Consequently, "[t]his rule necessarily vests in the Circuit Court a certain amount of discretion." *Hart v. State*, 637 So.2d 1329, 1336 (Miss. 1994) (quoting *Stokes v. State*, 548 So.2d 118, 125 (Miss. 1989)).

*Hoops v. State*, 681 So.2d 521, 530-31 (Miss. 1996).

¶33. When reviewing evidentiary determinations, this Court necessarily accords broad discretion to our trial courts. In *Jenkins v. State*, 507 So.2d 89 (Miss. 1987), we explored the reasoning behind our deference and stated that, as a matter of institutional necessity, we must accord certain leeway to the circuit court. *Id*. at 93. Moreover, the weighing and balancing task required by Rule 403 is not one susceptible of mechanical performance as it asks only that a judge rely on his/her own sound judgment. *Id*. As such, the law gives the trial court discretion. *Id*.

16

¶34. In asserting that his due process rights were violated when the trial court judge failed to perform an on-the-record Rule 403 balancing test, Jones has misapprehended the nature of our rules of evidence and the discretion afforded to trial judges when applying these rules. Accordingly, while we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be "filtered" through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. From a practical standpoint, even though this issue in today's case was initially addressed at a motion hearing, quite often the trial judge is required to make Rule 403 rulings from the bench with a witness on the stand, a jury in the box, and a lawyer on the floor making an objection. It follows that our review depends on the evidence and not the judge, and while a judge's on-the-record analysis is recommended as it serves to fortify the judge's position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial. The judge's failure to perform an on-the-record Rule 403 analysis in no way affected Jones's rights. Moreover, the evidence of the September 6 incident was properly admitted as its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Miss. R. Evid. 403. We, therefore, find this issue to be without merit.

## IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE VICTIM'S INJURIES

17

¶35. Over Jones's objection, the trial court allowed the State to enter photographs depicting Thomas' injuries and listed them as State's exhibits 6, 7, 8, 9, 10 and 11. Jones contends that admitting this evidence constituted reversible error to the extent the photographs were unnecessarily gruesome and highly prejudicial. This Court recently once again discussed the well-familiar standard of review on the issue of admissibility of photographs in *Johnson v. State*, 908 So.2d 100 (Miss. 2005), and stated that "the admissibility of photographs generally lies within the sound discretion of the trial court; and, absent an abuse of discretion, the court's decision will be upheld on appeal." *Id.* at 106 (citing *Jackson v. State*, 784 So.2d 180, 182-83 (Miss. 2001); *Taylor v. State,* 672 So.2d 1246, 1270 (Miss. 1996)). In *Scott v. State,* 878 So.2d 933 (Miss. 2004), we held:

> [T]he admissibility of pictures of gruesome crime scenes is within the sound discretion of the trial court. *Chatman v. State*, 761 So.2d 851, 854 (Miss. 2001). Reversal of the trial court will occur only where there is a clear abuse of discretion. *Id.*; *Davis v. State*, 551 So.2d 165, 173 (Miss. 1989). "The discretion of the trial judge 'runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.'" *Spann v. State*, 771 So.2d 883, 895 (Miss. 2000) (quoting *Williams v. State*, 544 So.2d 782, 785 (Miss. 1987)). Some probative value is the only requirement needed in order to support a trial judge's decision to admit photographs into evidence. *Jordan v. State*, 728 So.2d 1088, 1094 (Miss. 1998).

*Id.* at 985.

¶36. In the case sub judice, the decision to allow the photographs depicting Thomas's injuries was clearly within the broad discretion afforded to the trial court. While Jones readily admits that the injuries sustained by Thomas were serious, the mere fact that the defense is

willing to stipulate what the prosecution hopes to prove by admitting photographs into evidence does not bar the photographs' admissibility. ***Simmons v. State***, 805 So.2d 452, 485 (Miss. 2001). The State had the responsibility of presenting a credible story to the jury which accurately depicted the events and the injuries which resulted from the incident that occurred on September 7, 2003. To this end, there is little doubt that the photographs had probative value inasmuch as they provided substantial support to the testimony offered by the State's witnesses. Finding it was clearly within the discretion of the trial judge to allow the photographs into evidence, we hold this issue is without merit.

## V.     WHETHER THE TRIAL COURT ERRED BY NOT GIVING THE JURY A CIRCUMSTANTIAL EVIDENCE INSTRUCTION

¶37. Jones assigns error to the prosecution's failure to support the intent element of the aggravated assault charge with concrete evidence. Moreover, Jones claims that the only evidence produced regarding his intent to commit aggravated assault was circumstantial and that the circuit court committed reversible error when it refused to submit instruction D-6 as a two-theory or circumstantial evidence instruction.[2]

---

[2]Instruction D-6 stated:

The Court instructs the jury that the defendant, Anthony Jones, is never required to prove his innocence, and in order for him to be acquitted it is not necessary the jury be satisfied in their (sic) mind he is in fact innocent, but whenever there arises out of the evidence a reasonable probability that he is innocent, then he is entitled to an acquittal for reasonable probability of innocence is always reasonable doubt of guilt. In other words, although the theory that hi (sic) is guilty is more reasonable that (sic) the theory that hi (sic) is innocent, yet, if there arises out of the evidence, and there is supported by the evidence, any reasonable theory under which the defendant may probably be innocent, he is

19

¶38.    It is well-settled that a circumstantial evidence instruction "should be given only when the prosecution is without a confession or eyewitness to the gravamen of the offense charged." ***Leedom v. State***, 796 So.2d 1010, 1020 (Miss. 2001).  In ***Keys v. State***, 478 So.2d 266, 267 (Miss. 1985), we explained this premise:

> It is the law in this state that, where the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled upon request to have the jury instructed that, before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. *See, e.g.,* ***Billiot v. State***, 454 So.2d 445, 461-62 (Miss. 1984). There is, to be sure, loose talk in some of our cases to the effect that the circumstantial evidence instruction must be given where only one of the elements of the offense charged is established circumstantially.  *See, e.g.,* ***Collins v. State***, 447 So.2d 645, 646 (Miss. 1984); ***King v. State***, 315 So.2d 925, 926 (Miss. 1975); ***Love v. State***, 208 So.2d 755, 757 (Miss. 1968). A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged.

***Keys v. State***, 478 So.2d 266, 267 (Miss. 1985).

¶39.    Jones clearly misinterprets the law of this state in regards to circumstantial evidence. According to his theory, virtually every case would require an instruction delineating the hypothetical nature of the State's case.   Additionally, "this Court has...distinguished the element of intent from other elements by allowing the State to use circumstantial evidence to prove intent, without the circumstantial evidence instruction." ***Hunt v. State***, 687 So.2d 1154, 1162 (Miss. 1996) (citing ***Jones v. State***, 635 So.2d 884, 886-87 (Miss. 1994)).

¶40.    For these reasons, we find that this issue is without merit.

---

entitled to be acquitted.

20

## VI. WHETHER JONES'S ATTORNEY WAS INEFFECTIVE FOR NOT PRESENTING EVIDENCE OF THE VICTIM'S UNCHARGED MISCONDUCT FOR FORGING THE DEFENDANT'S SIGNATURE AND PRESENTING FALSE INFORMATION TO THE MISSISSIPPI DEPARTMENT OF HUMAN SERVICES

¶41. Jones submits a pro se argument to this Court claiming that his counsel at trial performed ineffectively to the extent he did not attempt to admit evidence of Thomas's alleged fraudulent dealings with MDHS. To this end, Jones, who allegedly watched Thomas's children during the day, contends that Thomas, without his knowledge, fraudulently filed a report with MDHS and claimed that Jones was running a day-care service which entitled him to compensation from MDHS. According to Jones, Thomas's actions resulted in her fraudulently receiving money from MDHS. Jones further alleges that had his attorney presented this evidence at trial, he would have been exonerated.

¶42. In *Rankin v. State*, 636 So.2d 652 (Miss. 1994), we enunciated the application of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to claims asserting ineffective assistance of counsel:

> The *Strickland* test requires a showing that counsel's performance was sufficiently deficient to constitute prejudice to the defense. *McQuarter*, 574 So.2d at 687. The defendant has the burden of proof on both prongs. *Id*. A strong but rebuttable presumption, that counsel's performance falls within the wide range of reasonable professional assistance, exists. *McQuarter*, 574 So.2d at 687; *Waldrop*, 506 So.2d at 275. The defendant must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court. *Nicolaou v. State*, 612 So.2d 1080, 1086 (Miss. 1992); *Ahmad a/k/a Coleman v. State*, 603 So.2d 843, 848 (Miss. 1992).

*Rankin*, 636 So.2d at 656.

¶43.   Jones's claim that he should be afforded a new trial based on his lawyer's failure to submit this questionable evidence of Thomas's dealings with MDHS, clearly fails to hurdle the high standards by which we review ineffective assistance of counsel claims.   Moreover, *Strickland* clearly obviates Jones's evidentiary claim to the extent that the evidence, which he proposes should have been submitted, was, at the very least, irrelevant. To this end, Jones can not even meet the first prong set forth by *Strickland* and demonstrate to this Court that his trial lawyer even committed error.   All of this having been said, it follows that, even assuming arguendo that the performance of Jones's trial counsel was deficient, Jones's claim unquestionably falls well short of meeting *Strickland's* important second prong which requires Jones to demonstrate that but for his lawyer's error he would have prevailed at trial. As such, this pro se issue is wholly without merit.

## CONCLUSION

¶44.   Finding Jones's assignments of error to be without merit for the reasons stated, we affirm the Warren County Circuit Court's final judgment of conviction for the crimes of aggravated assault, kidnapping, and possession of a firearm by a convicted felon, and sentences of consecutive terms of twenty, thirty, and three years, respectively, as a habitual offender, in the custody of the Mississippi Department of Corrections.

¶45.   **COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS, WITHOUT HOPE OF PAROLE OR PROBATION AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.   COUNT II: CONVICTION OF KIDNAPPING AND**

**SENTENCE OF THIRTY (30) YEARS, WITHOUT HOPE OF PAROLE OR PROBATION AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF CARRYING A WEAPON AFTER A FELONY CONVICTION AND SENTENCE OF THREE (3) YEARS, WITHOUT HOPE OF PAROLE OR PROBATION AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**